IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | * | |
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-16-485 |
| MARCUS LISBON, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

On July 10, 2017, the Defendant appeared for sentencing. The parties sharply disagreed on whether "career offender" status should be accorded to the Defendant when the sentencing guidelines were computed in his case. All similarly situated co-defendants in this case (and in a companion matter, Crim. No. JKB-16-0484) joined the Defendant's contention that the career offender provision is inapplicable in the circumstances present here, and the Office of the Federal Public Defender, as amicus, also argued in favor of that position. During the sentencing hearing, the Court found that the Defendant's conviction of the crime of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), did not subject him to treatment as a career offender under the guidelines, despite his otherwise apparently qualifying criminal history. The Court now issues this Memorandum to explain its ruling.

  I. **The Career Offender Provision, Conspiracies, and the Rule of Lenity.**

The rule of lenity has been a cornerstone of American jurisprudence since the early days of the republic, demanding that in the criminal context, statutory ambiguity should be resolved in favor of the defendant. *United States v. Santos*, 553 U.S. 507, 515 (2008); *see also United States*

*v. Wiltberger*, 18 U.S. 76, 105 (1820) ("[P]robability is not a guide which a court, in construing a penal statute, can safely take."). Ambiguities in the sentencing guidelines demand that in this case the Court decline to apply the career offender enhancement, U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.2(b) (U.S. Sentencing Comm'n 2016), in determining Defendant Lisbon's sentence.

The career offender enhancement refers to the sentencing guidelines' application of an increased offense level and increased criminal history category when (1) a defendant is at least eighteen years of age at the time of the offense, (2) the offense of conviction is a felony that is either a crime of violence[1] or a controlled substance offense, and (3) the defendant has at least two prior felony convictions for crimes of violence or controlled substance offenses. U.S.S.G. § 4B1.1 (2016). The guidelines define "controlled substance offense" as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense

U.S.S.G. § 4B1.2(b). The commentary to that provision indicates that "[f]or purposes of this guideline—'crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." *Id.* cmt. n.1. However, the guideline text itself neither mentions conspiracy nor other inchoate offenses, nor does it provide any textual clues to indicate that its definition should be read expansively.[2] Commentary that functions to interpret a guideline or to explain how it is applied is controlling, but where the

---

[1] The government does not allege that the offense in this case qualifies as a "crime of violence."

[2] By contrast, the Armed Career Criminal Act defines the term "serious drug offense" to include "an offense under State law, *involving* manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii) (2017) (emphasis added). Courts have read the inclusion of the word "involving" to demonstrate a legislative intention that the list of offenses be read expansively. *United States v. McKenney*, 450 F.3d 39, 42 (1st Cir. 2006). However, the guidelines do not employ "involving" or any similar word to expand the crimes listed in its definition of "controlled substance offense." U.S.S.G. § 4B1.2(b).

commentary is inconsistent with the text "in that following one will result in violating the dictates of the other," courts must comply with the text, not the commentary. *Stinson v. United States*, 508 U.S. 36, 42-45 (1993).

The Court need not rule on the close and difficult question of whether the commentary's inclusion of conspiracy and other inchoate offenses is inconsistent with the text of the sentencing guidelines or whether it simply interprets the text. Indeed, it is in the very subtlety of that inquiry that the answer is found to the core question, which is, of course, whether the career offender provision applies here at all.

The Court is confronted with an abstract question: is commentary language that *expands* the scope of the coverage of an otherwise clearly stated and limited guideline, such that offenses not otherwise covered are now swept in, *inconsistent* with that guideline? Or, is such commentary merely interpretive and explanatory? At some point, *expansion* creates *inconsistency*. But at *what* point? Put differently, here we have commentary that clearly and materially expands the scope of a guideline. But does the commentary encourage so much expansion that it creates an inconsistency with the guideline? The Court could attempt to define the point at which expansion becomes inconsistency and then sentence based on that subtle conclusion, but should it do so? Should years of a man's liberty turn on such fine line drawing? Wherever the Court ultimately drew the line would be subject to reasonable debate. And, it is *that* circumstance that implicates the rule of lenity.

Penal provisions should not be so ambiguous or subtle that their plain meaning is subject to reasonable debate. Because such a circumstance prevails here, the rule of lenity dictates that rather than attempt the drawing of the finest of lines, defining when expansion becomes inconsistency, instead the Court should abandon the subtle "line drawing" exercise and simply

resolve the ambiguity in the Defendant's favor. Accordingly, applying the rule of lenity, the Court finds that Defendant Lisbon's conviction for RICO conspiracy does not constitute a "controlled substance offense" subject to enhancement under the career offender provision.

## II. RICO Conspiracies as Career Offender Predicates.

Alternatively, even if § 4B1.2(b) "controlled substance offenses" can include conspiracies generally, the "formal categorical approach" to consideration of predicate offenses counsels in favor of considering the crime of RICO conspiracy to be beyond the scope of the career offender enhancement provision.[3] A defendant may be convicted of RICO conspiracy if he is employed by or associated with "any enterprise engaged in, or the activities of which affect, interstate or foreign commerce," and he conspires "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962. Racketeering activity includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year" along with any act that is indictable under one of over one hundred enumerated provisions of the United States Code. 18 U.S.C. § 1961(1).

In *Taylor v. United States*, 495 U.S. 575 (1990), the Supreme Court established a principle termed the "formal categorical approach" to help assess when a defendant's prior conviction constitutes a predicate offense subject to an applicable sentencing guideline.[4] *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013). According to that approach, a

---

[3] The "categorical approach's" cousin, the "modified categorical approach," ends up being irrelevant to the analysis in this case, as explained *infra*.
[4] *Taylor* applied the categorical approach in the context of the Armed Career Criminal Act, but courts apply the same approach under the career offender enhancement. *See United States v. Dozier*, 848 F.3d 180, 184 (4th Cir. 2017).

sentencing court may not consider the facts underlying a particular conviction but must look only to the statutory definition of the offense. *Id.* Only if the elements of the offense are the same as or included among those of the "generic version" of a crime listed in a sentencing guideline does the guideline apply. *Id.* The "generic version" is defined by contemporary usage and "roughly corresponds to the definitions of the offense in a majority of the States' criminal codes." *United States v. Garcia-Santana*, 774 F.3d 528, 534 (9th Cir. 2014) (citing *Taylor*, 495 U.S. at 589, 592) (internal quotation marks omitted). If the instant offense "sweeps more broadly than the generic crime," a conviction under that law cannot count as a predicate under the applicable guideline. *Descamps*, 133 S. Ct. at 2283.

*Taylor* also acknowledged a "narrow range of cases" in which a sentencing court may go beyond the statutory elements to determine whether a sentencing guideline applies. *Id.* at 2284. Called the "modified categorical approach," this rule applies in cases where (1) the statutory offense is divisible into two or more distinct versions, each defined by alternative elements, and (2) at least one of those alternatives matches or is subsumed by the generic definition of the crime in the sentencing guidelines. *Id.* If *both* of these conditions are met, a sentencing court may look beyond the statutory elements to examine a limited class of documents (*e.g.*, jury instructions) and determine whether the sentencing guideline at issue applies to the version of the crime of which the defendant was convicted. *Id.*

In the instant case, the Court need not decide whether the offense of RICO conspiracy may be defined by alternative elements[5] because ambiguities in the generic definition of conspiracy make it unclear whether *any* type of RICO conspiracy *ever* fits the generic definition.

---

[5] There is some reason to doubt the divisibility of RICO conspiracy, as several courts of appeals have held that there is no requirement for jurors to reach a unanimous verdict as to the specific racketeering activities contemplated by participants in the enterprise in question. *See United States v. Wilson*, 579 F. App'x 338, 347 (6th Cir. 2014) (unpublished) (*citing United States v. Randall,* 661 F.3d 1291, 1299 (10th Cir 2011); *United States v. Applins*, 637 F.3d 59, 81-82 (2d Cir. 2011)).

5

The Court can only apply the modified categorical approach—and thereby consider evidence identifying the particular type of RICO conspiracy with which the defendant has been convicted—if there is at least *some* type of RICO conspiracy that fits the generic definition of conspiracy. *See Descamps*, 133 S. Ct. at 2284. If no type of RICO conspiracy qualifies as a "generic conspiracy," then RICO conspiracy cannot be a controlled substance offense subject to the career offender enhancement and the Court need not consider divisibility issues and need not ask whether Defendant's conviction is a "controlled substance RICO conspiracy."

Regardless of the type of racketeering activity at issue, a conviction for RICO conspiracy requires no proof of any overt act in furtherance of the conspiracy. *See Salinas v. United States*, 552 U.S. 52, 63 (1997). Therefore, if the generic crime of conspiracy requires proof of an overt act in furtherance of the conspiracy, then the definition for RICO conspiracy "sweeps more broadly than the generic crime," s*ee Descamps*, 133 S. Ct. at 2283, capturing both conspiracies that require an overt act and those that do not. There is significant, but not conclusive, support for the position that the generic definition of conspiracy involves an overt act requirement. To the extent that the majority position among state penal codes is determinative of the generic definition, it is noteworthy that in forty out of fifty-four U.S. jurisdictions, a conviction for conspiracy requires proof of an overt act. *Garcia-Santana*, 774 F.3d at 534–35. On the other hand, other federal conspiracy statutes besides RICO conspiracy are mixed as to the inclusion of an overt act requirement. *Compare United States v. Shabani*, 513 U.S. 10, 11 (1994) (holding that a conviction for conspiracy to commit a controlled substance offense under 21 U.S.C. § 846 requires no finding of an overt act), *with* 18 U.S.C. § 371 (2017) (defining a conspiracy to commit an offense against or to defraud the United States to require an overt act). To further muddy the waters, the Model Penal Code requires a conviction for conspiracy to be supported by

proof of an overt act, but not in cases of conspiracies to commit first or second degree felonies. Model Penal Code § 5.03(5) (Am. Law. Inst. 2017).

Thus, as the Court faces the prospect of defining "generic conspiracy" by looking to contemporary usage, it again finds itself in a position where any determination it might make would be subject to reasonable debate. This time, even if "generic conspiracy" is a predicate offense subject to the career offender enhancement provision, it is ambiguous whether "generic conspiracy" requires the demonstration of an overt act in furtherance of the conspiracy (the strongest argument is that it *does*). It is thus at least ambiguous whether any type of RICO conspiracy would fit within the generic definition, given the looser elements of RICO conspiracy (*i.e.*, no requirement for an overt act). As stated above, penal provisions should not be so ambiguous as to occasion reasonable debate as to their meaning. Because there could be reasonable debate as to whether RICO conspiracy qualifies as a *generic* conspiracy, and because the applicability of the career offender enhancement in this case could depend on such a determination, the rule of lenity demands not that the ambiguity be reduced to a precise answer but instead that it simply be resolved in favor of the defendant. Accordingly, applying the rule of lenity to RICO conspiracies, such conspiracies do not count as *generic* conspiracies, and therefore such conspiracies cannot serve as career offender predicates.

In summary, if some conspiracy offenses are subject to enhancement under the career offender provision (this Court says none is, *supra*, Part I), then the specific offense of RICO conspiracy nonetheless fails to constitute a predicate offense under the career offender provision because its elements may not fit within the limit set by the generic definition of conspiracy. The Court never reaches further questions related to divisibility as they need not be answered to decide this issue.

### III. Fair and Just Sentences Seldom Spring from the
### Resolution of Minute Linguistic Conflicts—This Case is Not an Exception.

That Defendant Lisbon's sentencing guideline range would effectively triple based on minute linguistic details risks the imposition of a punishment that is unfairly arbitrary. Sentencing according to such a "can't see the forest for the trees" rubric would be flatly dangerous to the quest for justice, and the Court simply will not do it.

Finally, the Court reiterates here what it said on the record during the sentencing hearing: even if it had reached the opposite conclusion when computing the guidelines and found that it was compelled by the guidelines to treat the Defendant as a career offender, it would have nonetheless imposed the same sentence of sixty-five months[6] imprisonment by invoking its discretion[7] to "vary" downward. In all the circumstances presented here, including a lack of violence and the Defendant's extreme remorse, a sentence of any greater length would have been "greater than necessary" to advance the purposes outlined in the sentencing statute. 18 U.S.C. § 3553(a).

---

[6] As it happens, in sentencing the Defendant to sixty-five months, the Court actually *varied upward* by some two years from the non "career offender" guideline range it otherwise found applicable, owing to the fact that the Defendant had sustained some seven prior convictions—including six for controlled substance offenses. Plus, the situation was aggravated in that the Defendant had graduated to distributing illegal drugs into a prison, a facility in which he had previously been held and of which he had special knowledge that no doubt assisted the conspirators in penetrating the facility.

[7] While the Court must always faithfully compute the guidelines before imposing sentence, it ultimately retains the authority to sentence outside the range recommended. *See* 18 U.S.C. § 3553(a)(1) *as interpreted and invalidated in part by United States v. Booker*, 543 U.S. 220, 245-46 (2005).

DATED this 18th day of July, 2017.

                                    BY THE COURT:

                                    /s/
                                  James K. Bredar
                                  United States District Judge